IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHAWN KEVIN FROST, SR.,

    Petitioner,                   No. 2:12-cv-2461 KJM CKD P

  vs.

G.D. LEWIS,                           <u>ORDER AND</u>

    Respondent.               <u>FINDINGS AND RECOMMENDATIONS</u>

                          /

        Petitioner is a California prisoner proceeding pro se with an application for writ of habeas corpus under 28 U.S.C. § 2254. He challenges 1996 convictions for several offenses including kidnaping and rape. Respondent has filed a motion asking that this matter be dismissed as time-barred. Petitioner has filed a motion for leave to conduct discovery.

1. <u>Motion To Dismiss</u>

        The limitations period applicable to this action may be found at 28 U.S.C. § 2244(d)(1). That statute provides as follows:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

1

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The limitations period applicable to this action began to run under § 2244(d)(1)(A) on January 14, 1998;[1] the day after time expired for petitioner to file a petition for writ of certiorari in the United State Supreme Court concerning the direct review of his convictions and sentences. See Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999) ("We hold that the period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition."). This action was commenced by petitioner on August 19, 2012[2] and there does not appear to be any statutory basis for tolling the limitations period. Therefore, unless there is a basis for equitable tolling, this action is time-barred.

The statute of limitations may be subject to equitable tolling if a petitioner can demonstrate that (1) he had been pursuing his rights diligently, and (2) some extraordinary

---

[1] Some of the claims presented in petitioner's habeas application involve what petitioner describes as newly discovered evidence. However, petitioner fails to show that the limitations period applicable to this action should commence under 28 U.S.C. § 2244(d)(1)(D) because he fails to show that the factual predicate for any of his claims could not have been discovered, with the exercise of due diligence, until after his convictions became final.

[2] Documents filed by prisoners are deemed "filed" when they are submitted to prison officials for mailing. See Houston v. Lack, 487 U.S. 266, 270 (1988). The proof of service attached to petitioner's habeas application indicates he submitted it to officials for mailing on August 19, 2012.

2

1 circumstance prevented him from filing on time.  Holland v. Florida, 130 S. Ct. 2549, 2562
2 (2010).  Petitioner must show that the "extraordinary circumstance" was the cause of the
3 untimeliness, see Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003), and that the
4 "extraordinary circumstance" was beyond his control.  Shannon v. Newland, 410 F.3d 1083,
5 1089-90 (9th Cir. 2005).  "[T]he threshold necessary to trigger equitable tolling . . . is very high,
6 lest the exception swallow the rule."  Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th
7 Cir. 2009) quoting Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002).

8       Petitioner asserts he is entitled to equitable tolling because: 1) the California
9 Department of Corrections and Rehabilitation either lost or destroyed his trial transcripts and
10 some of his personal property; and 2) he suffers from severe depression which contributed to
11 petitioner's "lapse in self-preservation and the ability to act as his own counsel."  Opp'n at 3.
12 With respect to number 1, petitioner fails to indicate how long he was without his transcripts,
13 what other personal property was taken and why the confiscation of his property caused him to be
14 13 years late.  With respect to 2, petitioner does not explain how depression caused him to file
15 late.

16       Finally, petitioner asserts the court should excuse the fact that he has filed outside
17 the applicable limitations period because he is "actually innocent."  An otherwise time-barred
18 habeas petitioner may proceed with his habeas claims if he can show that, in light of new and
19 reliable evidence, it is more likely than not that no reasonable juror would have found him guilty
20 beyond a reasonable doubt.  Lee v. Lampert, 653 F.3d 929, 938 (9th Cir. 2011).  In order to
21 determine if the habeas petitioner has met the "actually innocent" standard described above, the
22 court considers the new evidence presented in conjunction with the evidence which was
23 presented at trial.  Id.  In the Ninth Circuit, "new" evidence is simply evidence which was not
24 presented at trial.  Griffin v. Johnson, 350 F.3d 956, 962 (9th Cir. 2003).
25 /////
26 /////

1      The court will waive the applicable limitations period and hear a habeas

2 petitioner's claims under the "actual innocence" exception only in the extraordinary case.  Lee,

3 653 F.3d at 938.  This is not such a case.

4      On Direct Appeal, the California Court of Appeal summarized the evidence

5 presented at trial as follows:

> On the evening of April 4, 1995, Jeanine S. was visiting her paramour, Alan G., at his home in Sacramento.  At 12:30 a.m., while in bed with Alan, Jeanine heard a knock on the front door.  Alan investigated and told Jeanine to call the police because defendant, her ex-husband, was at the door.  Jeanine telephoned the police and hid in the bedroom closet, fearing defendant might force his way into the house.
>
> After knocking several times, defendant kicked in the front door and told Alan, "if you get in my way, I'll shoot you."  As Jeanine sat naked in the closet talking to the police on the telephone, defendant opened the closet door, grabbed her by the hair, lifted her to a standing position and dragged her into the living room.  Defendant hit Jeanine about the face and head until she fell back into a chair.  He again grabbed her by the hair, lifted her to a standing position and told her they were leaving.  Alan asked defendant to allow Jeanine to get dressed; she used the opportunity to go to the bathroom and put on her clothes.  Upon her return, defendant resumed hitting her.  Alan stepped between them; defendant told Jeanine to leave with him because "the police were on their way."
>
> Defendant told Alan to move his car out of the driveway, which he did.  Holding the keys to Jeanine's car in one hand, defendant used his other hand to guide her to the car.  Jeanine did not want to leave, but did so because she was afraid of the defendant.  She sat in the driver's seat and put the key in the ignition.  Jeanine drove according to defendant's directions and, after approximately ten minutes, stopped at Brock Park.
>
> At the park, defendant took the keys from Jeanine, ordered her out of the car and told her to sit at the base of a hill near some bleachers.  He began hitting her and asked why she had lied to him and why he should not "beat [her] like a man."  He ordered her to remove her clothes and asked her how she felt.  When she replied, "naked," he said, "that's how I feel."
>
> Defendant ordered Jeanine to crawl up the hill where she had been sitting.  She repeatedly tried to climb up the muddy hill and slid back down.  He grabbed her by the hair, pulled her up the hill and told her to sit down and "entertain him."  Eventually, he told her to

get on her hands and knees and perform oral sex on him. During the act, he placed three fingers into her vagina from behind her legs. She felt a burning sensation which she attributed to dirty hands. She said she was unable to continue in that position, so he had her sit down while he stood in front of her. Eventually, he ejaculated on her face.

After allowing her to dress, defendant told Jeanine that the police would be looking for him; he asked if she was ready for "some wild, wild west type stuff," which she understood to mean an exchange of gunfire. They returned to her car and he ordered her to go to a motel. Unable to find a vacancy, he told her to drive to a nearby restaurant. She used the restroom while he sat in a booth with a view of the rear door. After sitting with him for a few minutes, she asked to call her mother, and he escorted her to a telephone outside the restaurant. Jeanine spoke to her mother briefly but was unable to say where she was. Defendant also spoke briefly with Jeanine's mother and said he would call her back. They then returned to the car and left.

As they drove, defendant refused to return to his own car because he feared the police would be watching it. He also refused to visit their son, who was living with Jeanine at the home of her cousin Bridget, because he feared Bridget would call the police. Instead, he ordered Jeanine to drive to a park in Del Paso Heights.

At the park, defendant continued to beat Jeanine and ordered her to remove her clothes. He pulled down his pants and ordered her to get on top of him and have sex with him. He was unable to perform and ordered her to "do something." They began talking and he said he "just needed to have sex" with her. She said she did not want to, and he said, "I know. But I just need it." She began to cry and said she really did not want to have sex with him. He then ordered her to take her pants down. He mounted her and attempted to put his penis inside her while she laid still. He punched her head and told her to move. He then rammed his penis inside her approximately three times until he ejaculated. At no point did she wish to have sex with him; she did so out of fear.

Defendant allowed Jeanine to dress, and said, "I bet you really thought I had a gun; didn't you?" She said, "Yes, I did." Jeanine drove alone to Bridget's house. Defendant arrived there a short while later but was not admitted. Jeanine telephoned the police who arrived within a few minutes.

Resp't's Lodged Doc. No. 2 at 2-5.

With his habeas petition, petitioner attaches affidavits from three sisters. Essentially, they all indicate that had they been called to testify at petitioner's trial, they all would

5

1  have indicated that they all believed petitioner and Jeanine were still in a relationship in April of
2  1995. They also indicate they would have testified that they believed Jeanine resented petitioner
3  because he had a child with another woman. Pet. at 11-13.[3]
4       Petitioner also claims in his opposition that the prosecution suppressed evidence
5  indicating that only weeks prior to the events at issue, Jeanine tried to have petitioner arrested for
6  kidnaping. Furthermore, petitioner asserts the prosecution engaged in misconduct by leading
7  jurors to believe that a small scar on her lip was caused by petitioner, when it was actually the
8  result of an injury Jeanine suffered when she was a child.
9       Regardless of how petitioner's sisters would have testified at trial regarding
10 petitioner and Jeanine's relationship status, Jeanine testified that she and petitioner were divorced
11 at the time the events at issue took place (RT 48) and that fact is not in dispute. While the "new"
12 evidence to which petitioner points might make Jeanine appear a little less credible as a witness,
13 it would not have had any significant effect on jurors deliberations. The "new" evidence
14 presented does little to undermine the direct evidence of petitioner's guilt presented in the
15 testimony of Jeanine and Alan G. or bolster petitioner's self-serving testimony. For these
16 reasons, the limitations period applicable to this action should not be waived via the "actual
17 innocence" exception and this action should be dismissed as time-barred.
18 2. <u>Motion For Discovery</u>
19      Petitioner seeks permission to subpoena various documents pertaining to his case
20 in the custody of the Sacramento County Sheriff and District Attorney. Under Rule 6 of the
21 Rules Governing § 2254 cases, a court may authorize discovery in a § 2254 action based upon a
22 showing of good cause. Discovery is available in the discretion of the trial court. <u>Rich v.
23 Calderon</u>, 187 F.3d 1064, 1068 (9th Cir. 1999). Courts should not allow prisoners to use federal
24 /////
25
26    [3] Page numbers are those assigned by the court's electronic docketing system.

discovery for fishing expeditions to investigate mere speculation. Calderon v. U.S. Dist. Ct., 98 F.3d 1102, 1106 (9th Cir. 1996).

In light of the fact that the court is recommending that this action be dismissed as time-barred, petitioner's motion for discovery will be denied. The only purpose for granting discovery at this point would be to allow petitioner to seek evidence which might support his "actual innocence" argument. There is nothing before the court which reasonably suggests petitioner could obtain information which would change the court's ruling with respect to petitioner's "actual innocence" argument if petitioner is permitted to engage in the discovery requested.

In accordance with the above, IT IS HEREBY ORDERED that petitioner's motion for leave to conduct discovery (Dkt. No. 21) is denied.

IT IS HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss (Dkt. No. 16) be granted;

2. Petitioner's application for writ of habeas corpus be dismissed; and

3. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the

/////

specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 13, 2013

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

---

1
fros1460.157